# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER L. TUCKER, | ) | Case No. 1:07-cv-00451-CAB |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN, DAVID BOBBY,[1] | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.  Introduction

Christopher Tucker, Petitioner, proceeding *pro se*,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2254. Tucker, an Ohio prisoner, is currently serving a prison term of twenty-three years to life for aggravated murder. This matter was referred to me under Local Rule 72.2(b)(2) to prepare a report and recommendation on Tucker's petition and other case-dispositive motions. Because Tucker has presented only procedurally defaulted or noncognizable claims, I recommend that the Court DENY Tucker's petition and not grant him a certificate of appealability.

## II.  Relevant Factual Background

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by

---

[1] In its return of writ, Respondent noted that "Harold May is the Warden of Richland Correctional Institution where Tucker is currently incarcerated. As such, he is the proper party respondent in this action. Rule 2(a), Rules Governing Section 2254 Cases." (ECF No. 67, PageID #: 753). Tucker captioned his traverse accordingly. (ECF No. 73, PageID #: 2138). The Court notes, however, that the Ohio Department of Rehabilitation and Correction now lists Kenneth Black as warden of the Richland Correctional Institution. Accordingly, Kenneth Black is the proper respondent under the Rules Governing Section 2254 Cases.

[2] When he filed his amended petition, Tucker was represented by counsel; however, he is now proceeding *pro se*. (*See* ECF No. 56 (marginal order granting counsel's motion to withdraw)).

clear and convincing evidence, that these factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

A.      **Tucker's Appeals**

Tucker's case has wound its way through both state and federal courts for many years. In the most recent appellate decision, the Ohio Eighth District Court of Appeals described the facts and procedural history in great detail:

> {¶ 3} Tucker was convicted of aggravated murder for the shooting death of Timothy Austin on May 22, 2003, outside Whatley's Lounge in Cleveland, Ohio. At trial, Nikia Beal and Joseph Fussell were the only witnesses to identify Tucker as the shooter. Beal was with Austin at the bar. She testified that she noticed Tucker inside the bar because he had been staring at her. When she and Austin walked outside the bar she heard gunshots and saw Austin fall to the ground. She stated she was looking at Tucker while he shot Austin and that he did not stop shooting until he was out of bullets. According to Beal, the area of the shooting was well lit by street lights. On her way home, someone told her the shooter's name was Christopher Tucker. She searched his name on the internet and found a photograph that matched the man she saw shoot Austin. She did not immediately go to police out of fear of retaliation. About a month after the shooting the police came to her apartment to question her.
>
> {¶ 4} Fussell testified at trial that he had attended high school with Tucker. He saw Tucker at the bar and gave him a hug. Fussell then left to buy a cigar from the gas station across the street. He heard gunshots and saw Tucker shooting Austin. Fussell waited to contact officers until the next day out of fear. Although he knew Tucker, he could not recall his name. He identified Tucker after looking at photographs in a mug shot book.
>
> {¶ 5} At trial, Tucker maintained [that] he was inside the bar during the shooting and presented witnesses, who were also his friends, in support of his alibi. One of his friends, Lahondra Hill, originally told police that Tucker was outside when the shootings occurred but later changed his testimony at trial. Tucker's other friend, Stefan King,

2

did not provide police with a statement. However, he testified at trial that Tucker was inside the bar. Tucker admitted that he knew Austin and that Austin had carjacked him in 1996 and had never apologized.

{¶ 6} Austin was in prison from 1996 until a month prior to the shooting. Tucker had just been released from prison two days prior to the shooting. Therefore, Tucker had seen Austin for the first time since the carjacking at Whatley's bar.

{¶ 7} The jury found Tucker guilty of aggravated murder and a firearm specification. The trial court sentenced him to three years for the firearm specification to be served consecutive to life in prison for the aggravated murder. Tucker filed an appeal, and we affirmed his conviction. *State v. Tucker*, 8th Dist. No. 83419, 2004–Ohio–5380 ("*Tucker I*").

{¶ 8} Thereafter, Tucker filed a petition for postconviction relief on April 24, 2004, arguing, among other things, that he was told that Nikia Beal had stated after the trial that she did not see the shooter because she ran once she heard the gunshots. He contended he could provide affidavits of people attesting to Beal's recantation; however, he failed to attach any evidence regarding her recantation to the petition.

{¶ 9} Tucker also filed a motion for a new trial on August 2, 2004, in which he argued that a new trial was warranted because Joseph Fussell had recanted. Attached to his motion was an affidavit from Fussell simply stating, "what I said I saw last year in May at Whatley's Bar is not what I really saw. I was mistaken. It was not Christopher Tucker."

{¶ 10} The trial court concluded that Tucker's petition for postconviction relief was untimely and that the recantation of one witness when two witnesses identified Tucker as the killer was insufficient to grant a new trial. Instead of immediately filing an appeal to this court, Tucker waited until June 2, 2006, to file a motion for a delayed appeal, which we denied. *State v. Tucker*, 8th Dist. No. 88254 (July 6, 2006) ("*Tucker II*").

{¶ 11} On August 2, 2007, Tucker filed a second petition for postconviction relief and a motion for a new trial. In support of these motions, he presented an affidavit from [a new and witness, identified only as] D.R., who stated that Tucker was inside the bar at the time the shooting took place outside the bar. D.R. stated that she did not know Tucker or his family, but was a neutral observer.

3

The trial court denied the motions without a hearing. Tucker appealed the trial court's denial of the motions. This court agreed that the trial court should have conducted a hearing regarding D.R.'s affidavit, but also held that Tucker's attempt to appeal the denial of his first petition for postconviction relief and motion for new trial were barred by *res judicata* because we had denied his delayed appeal in *Tucker II. State v. Tucker*, 8th Dist. No. 90799, 2008–Ohio– 5748 ("*Tucker III*").

{¶ 12} Prior to the court conducting the hearing on remand, Tucker again attempted to appeal from the trial court's denial of his first petition for postconviction relief and motion for a new trial that he attempted to appeal in *Tucker II*. He argued his appeal was timely filed because he was never served with notice of the trial court's judgment. This court agreed and considered Tucker's appeal.

{¶ 13} We held that the trial court correctly denied Tucker's first petition because he failed to attach an affidavit in support of his contention that Beal had stated that she could not identify the shooter. We also held the trial court did not err by denying Tucker's motion for a new trial based on Fussell's recantation because it was untimely filed. We also held that because of Beal's testimony identifying Tucker as the shooter, Fussell's affidavit would not have changed the result of the trial. We remanded the matter for the trial court to conduct the hearing ordered in *Tucker III. State v. Tucker*, 8th Dist. No. 95556, 2011–Ohio–4092 ("*Tucker IV*").

{¶ 14} Prior to the court conducting the evidentiary hearing, and prior to this court's ruling in *Tucker IV*, Tucker filed several motions in an attempt to expand the scope of the evidence to be considered at the hearing to include evidence that corroborated D.R.'s affidavit. He attempted to include affidavits by John Blue, Arthur Storey, Khaalis Miller, and Joe McLemore, who he contended were four new witnesses that either placed Tucker inside the bar at the time of the shooting, or saw someone other than Tucker commit the shooting. He also attempted to include a more expanded affidavit by Joseph Fussell, a polygraph test Tucker successfully passed seven years after his conviction, and the report of an expert regarding the reliability of Beal's eyewitness testimony.

{¶ 15} The trial court initially allowed some expanded evidence in, but stated that the scope may change after the appellate court issued its decision in *Tucker IV*. After *Tucker IV*, the trial court limited the scope of the hearing to "Petitioner's motion for postconviction relief and/or motion for new trial filed August 2, 2007, *only*." Journal Entry, April 13, 2012 (Emphasis sic.) The court contended Tucker's

4

motion for leave to supplement the motion for new trial, amendment or supplement to motion for leave to file supplement to motion for new trial, and petitioner's prehearing submission and response were "barred by *res judicata*, untimely, and the alleged new evidence fails to meet the standard in Criminal Rule 33(A)(6) as well as the requirements held by the Supreme Court of Ohio in *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370." Journal Entry, April 13, 2012.

{¶ 16} On April 16, 2012, the trial court conducted the evidentiary hearing at which D.R. testified in support of her affidavit. According to D.R., she contacted authorities in response to a flier she saw posted with Tucker's photograph in January 2007. The flier was posted by Tucker's family, who requested information from anyone that was at Whatley's Lounge the night of the murder and contended Tucker was a wrongly convicted man. D.R. kept the flyer for about a month prior to contacting Tucker's attorney listed on the flier. D.R. testified that she did not know Tucker or his family and that she only contacted Tucker's attorney because she felt it was the right thing to do.

{¶ 17} D.R. recognized Tucker from the photo because she was at Whatley's Bar the night in question. She claimed that Tucker was sitting near her playing a video game that she wanted to play. At one point, Tucker got up and she asked him if he was finished with the game. He responded he was not finished but was going to the juke box. She jokingly told him to play a song for her. According to D.R., as Tucker was returning from the juke box, shots were fired outside the bar. She stated that the people inside the bar rushed outside. She recalled Tucker was in front of her when exiting the bar because he was wearing a jacket with a Chief Wahoo logo on the back.

{¶ 18} The trial court concluded that D.R.'s testimony was merely cumulative evidence because Tucker had two alibi witnesses that testified that D.R. was inside the bar at the time of the shooting. The court also found problems with D.R.'s identification of Tucker. The court noted D.R. had only spoken with Tucker for a "split second" and had stated that Tucker was wearing a Chief Wahoo jacket, when the evidence indicated he was wearing a blue Phat Pharm jacket. In her affidavit, D.R. also stated that she saw Tucker get into a car with his friends and leave, while at the hearing she stated she saw Tucker get into his car and "assumed" he left.

{¶ 19} Finally, the court concluded that D.R.'s identification was suspect because although she identified Tucker from the flier photograph, she could not identify Tucker from a more recent

> photograph that she referenced in her affidavit. The trial court, therefore, denied Tucker's petition to set aside or vacate judgment of conviction and motion for new trial.

*State v. Tucker*, No. 98685, 2013 WL 3156532, at *1-4 (Ohio Ct. App. June 20, 2013) ("*Tucker V*") (footnotes omitted).

## III.    Relevant State Procedural History

### A.    Tucker's Conviction in State Court

In May 2003, a Cuyahoga County Grand Jury indicted Tucker on one count of aggravated murder (with a firearm specification) and one count of having a weapon while under disability. (ECF No. 13-1, PageID #: 300-02). In August, a jury found Tucker guilty of the aggravated murder charge. (ECF No. 13-3, PageID #: 84). That same day, Tucker pleaded no contest to the weapon under disability charge, and the trial court found him guilty. (ECF No. 13-2, PageID #: 220). The trial court sentenced Tucker to life in prison on the aggravated murder charge, three years (to run consecutively to the life sentence) for the firearm specification, and six months for having a weapon under disability (to run concurrently to the life sentence). (ECF No. 13-3, PageID #: 84). He was to be eligible for parole after 20 years. (ECF No. 13-3, PageID #: 84).

### B.    Tucker's Direct Appeal

Tucker filed a timely notice of appeal (ECF No. 13-4, PageID #: 57), and in January 2004, raised the following assignments of error through counsel on direct appeal:

1.    Christopher Tucker was denied effective assistance of counsel.[3]

2.    The [trial] court erred in repeatedly allowing important and damaging hearsay testimony into the trial.

---

[3] Tucker's ineffective-assistance-of-counsel claim was based on his counsel's purported failure to file a pre-trial motion to suppress Nikia Beal's identification testimony. (ECF No. 13-5, PageID #: 116-19).

6

3.      Christopher Tucker was denied a fair trial due to prosecutorial misconduct.

4.      Christopher Tucker's convictions for aggravated murder and having a weapon while under disability was based on insufficient evidence and against the manifest weight of the evidence.

(ECF No. 13-5, PageID #: 115-26). Tucker later filed a *pro se* "Supplemental Brief" (ECF No. 13-6), and the State filed a responsive brief. (ECF No. 13-7). On October 18, 2004, the Ohio Eighth District Court of Appeals overruled Tucker's assignments of error and affirmed the trial court's judgment. (ECF No. 13-8); *Tucker I*, 2004 WL 2251800. Tucker filed an untimely *pro se* notice of appeal to the Ohio Supreme Court on January 21, 2005, along with a motion for leave to file a delayed appeal. (ECF Nos. 13-10, 13-11). On March 16, 2005, the Ohio Supreme Court denied Tucker leave to file a delayed appeal and dismissed the case. (ECF No. 13-12).

C.      **Tucker's First State Post-Conviction Actions**

While his direct appeal was pending, on April 22, 2004, Tucker filed a *pro se* petition for state post-conviction relief in which he alleged:

1.      Ineffective assistance of trial counsel (due to counsel's "refus[al] to call witnesses requested by defendant that may have supported his alibi in question").

2.      Credibility of trial witness testimony.

3.      Judge possess[ed] apparent bias.

(ECF No. 13-14). The State opposed. (ECF No. 13-15).

Again while his direct appeal was pending, on August 2, 2004, Tucker filed a *pro se* motion for new trial asserting that he had newly discovered evidence. (ECF No. 13-16). He attached a notarized statement from Joseph Fussell, a trial witness, wherein Mr. Fussell stated that he "was mistaken" in his identification of Tucker. (ECF No. 13-16, PageID #: 153). The State again

7

opposed. (ECF No. 13-17). The State also moved for preliminary motions on both pending matters. (ECF No. 13-21).

On September 22, 2004, the trial judge held a hearing, and then ordered Tucker to "file an amended, specific motion for post-conviction relief." (ECF No. 13-22). Through new counsel, Tucker did so on November 10, 2004. (ECF No. 13-23 (entitled "Defendant's Supplemental Petition for Postconviction Relief and a New Trial")). Therein, he asserted that his convictions were "based on perjured testimony" and that "both of the government's two material witnesses have recanted his/her testimony." (ECF No. 13-23, PageID #: 78). The trial judge scheduled a "full evidentiary hearing to include, presumably (at the parties' discretion), the testimony of Joseph Fussell about the circumstances surrounding his apparent recantation" for February 25, 2005. (ECF No. 13-24). The State moved for reconsideration of the order scheduling the hearing. (ECF No. 13-25).

On March 31, 2006, the new trial judge[4] vacated the order for an evidentiary hearing, finding that the underlying motion was untimely filed based on "[Ohio Criminal Rule] 33 as well as the 6-part test outlined in *St. v. Perro*." (ECF No. 13-26, PageID #: 85). The judge also noted that "the Defendant's new evidence would not change the outcome of the trial had it been admitted." (ECF No. 13-26, PageID #: 85). On June 2, 2006, Tucker filed a notice of appeal (ECF No. 12-28), and Motion for Leave to File Notice of Appeal out of Rule (*instanter*). (ECF No. 13-29). In his motion for leave, he argued that counsel had not mailed him the trial court's order until April 13, 2006, and he did not receive it until April 18, 2006. (ECF No. 13-29, PageID #: 93). He

---

[4] A judicial election in the intervening time period resulted in Judge Eileen T. Gallagher succeeding the original trial judge, Judge John P. O'Donnell.

argued that this delay, in addition to his *pro se* status, led to his delayed filing. (ECF No. 13-29, PageID #: 93).

On July 6, 2006, the appellate court summarily denied Tucker's motion for leave to file a delayed notice of appeal. (ECF No. 13-30); ("*Tucker II*"); (ECF No. 13-31) (appeal dismissal). Tucker did not file an appeal with the Ohio Supreme Court. *See* ECF No. 13-32 (docket sheet).

### D.    Tucker's Second State Post-Conviction Action

On August 2, 2007, Tucker filed a *pro se* motion to set aside or vacate judgment of conviction under Ohio Revised Code § 2953.21 and for a new trial based on newly discovered evidence. (ECF No. 67-1, PageID #: 797-804). Therein, Tucker asserted that he had newly discovered alibi evidence in the form of an Affidavit from witness D.R., who asserted that she saw a flyer in January 2007 regarding Tucker's case and recalled being at Whatley's bar on the night of the shooting. (ECF No. 67-1, PageID #: 801). She described her interaction with Tucker, and stated that "[a]t the time of the shooting, I know for a fact that Christopher Tucker was inside Whatley's bar." (ECF No. 67-1, PageID #: 802); see also *State v. Tucker*, No. 90799, 2008 WL 4813826, at *3 (Ohio Ct. App. Dec. 18, 2008) ("*Tucker III*") ("She further averred that she knew Tucker was inside the bar at the time of the shooting, because she had just spoken with him when they heard shots outside the bar."). The State filed a brief in opposition (ECF No. 67-1, PageID #: 805-12), and on November 19, 2007, the trial court denied Tucker's state post-conviction petition (without a hearing) because he had "failed to demonstrate adequate grounds upon which relief can be granted" and could not "demonstrate an adequate excuse for the delay in filing the petition or establish a credible claim that no reasonable fact finder would have found him guilty, but for the new evidence Defendant attach[ed] to his petition." (ECF No. 67-1, PageID #: 813). The trial court also denied Tucker's motions for appointment of counsel and for an expert. See *State v. Tucker*,

Cuyahoga County Court of Common Pleas, Case No. CR-03-437731 (docket entry dated November 19, 2019), available at: https://cpdocket.cp.cuyahogacounty.us/TOS.aspx.[5]

On December 18, 2007, Tucker filed a *pro se* appeal of the trial court's denial of his motion for postconviction relief and motion for new trial. (ECF No. 67-1, PageID #: 831).[6] In his brief, Tucker raised two assignments of error:

1.    The trial court abused its discretion in overruling Appellant's motion for [a] new trial.

2.    Christopher Tucker's convictions are voidable and/or deserving of an evidentiary hearing due to perjured testimony.

(ECF No. 67-1, PageID #: 839-54). The State filed a responsive brief (*see* ECF No. 67-1, PageID #: 879 (docket entry dated May 20, 2008)), and Tucker's counsel requested, and was granted, leave to supplement with additional case law. (*See* ECF No. 67-1, PageID #: 879 (docket entries dated October 16, 2008 and October 29, 2008)). On November 6, 2008, the appellate court reversed and remanded the case to the trial court. (ECF No. 67-1, PageID #: 862-78); *Tucker III*, 2008 WL 4813826. The court sustained Tucker's first assignment of error, finding that the trial court abused its discretion in: 1) not granting a hearing on the state post-conviction petition[7]; and 2) finding that

---

[5] The copy of the state court docket that Respondent submitted is missing printed pages 14 and 15. (*See* ECF No. 67-1, PageID #: 824-25 (jumping from "page 13 of 21" to "page 16 of 21")). It is also missing Exhibit 33, the docket entries referenced.

[6] Tucker's motion for appointment of counsel was denied (*see* ECF No. 67-1, PageID #: 880 (docket entry dated January 18, 2008), but attorney R. Brian Moriarty later entered an appearance on Tucker's behalf and submitted supplemental case law. (*See* ECF No. 67-1, PageID #: 880 (docket entries dated July 1, 2008 and October 16, 2008)).

[7] The court "note[d] further that because Tucker's allegations warrant an evidentiary hearing, the trial court erred in denying Tucker's motion for appointment of counsel." *Tucker III*, 2008 WL 4813826, at *6.

Tucker "did not demonstrate an adequate excuse for the delay in filing his second petition." *Tucker III*, 2008 WL 4813826, at *4-6.[8] Therefore, the court remanded for a hearing. *Id.* at *6-7.

### E. Tucker's Appeal from the Trial Court's March 2006 Entry Denying First State Post-Conviction Motions

By August 2011, the hearing mandated by the appellate court's reversal in *Tucker III*, had not occurred. See *State v. Tucker*, No. 95556, 2011 WL 3612212, at *2 (Ohio Ct. App. Aug. 18, 2011) ("*Tucker IV*"). "Shortly before the hearing was set to commence," Tucker filed an appeal from the March 31, 2006 judgment entry denying his first motion for new trial and for postconviction relief. *Id.* The State sought dismissal, claiming the appeal was untimely, however, "due to deficiencies in the trial court's order and docket", the appellate court concluded that appeal was timely. *Id.* In his appellate brief, Tucker argued that "[t]he trial court violated Chris Tucker's State and Federal constitutional rights when it summarily dismissed his petition for state post-conviction relief and motion for a new trial." (ECF No. 67-1, PageID #: 881-900). The State filed a responsive brief (ECF No. 67-1, PageID #: 922-45), and Tucker replied (ECF No. 67-1, PageID #: 946-56). On August 18, 2011, the appellate court affirmed the trial court's determination that the first state post-conviction action was untimely because Tucker had "failed to demonstrate that a reasonable fact finder would have found him not guilty because he failed to attach any supporting evidence that Beal testified untruthfully," and therefore the "petition was untimely because [Tucker] failed to satisfy the second condition in Ohio Revised Code § 2953.23(A)(1)." *Tucker IV*, 2011 WL 3612212, at *5. The appellate court also found Tucker's first motion for new trial

---

[8] The appellate court found Tucker's second assignment of error—that the successor judge abused her discretion in vacating the original trial judge's order granting an evidentiary hearing on his first petition for postconviction relief—barred by *res judicata* "[b]ecause Tucker appealed the trial court's ruling and his appeal was subsequently dismissed." *Tucker III*, 2008 WL 4813826, at *6.

was untimely because he did not seek leave to file the motion outside the 120-day filing period, and did not show by clear and convincing evidence that he was unavoidably prevented from discovering the basis of the motion within that 120-day period. *Id.* Therefore, the appellate court concluded that the trial court did not abuse its discretion in denying Tucker's first motion for a new trial and state post-conviction petition without a hearing "where appellant failed to support those motions with adequate evidence necessitating a hearing." *Id.* at *6. The Court ordered, however, that "[t]he trial court should now, after many years, conduct the hearing ordered by this court in *Tucker III* [on Tucker's second state post-conviction petition and motion for new trial]." *Id.*

On October 3, 2011, both the State (ECF No. 67-1, PageID #: 975-76) and Tucker (ECF No. 67-1, PageID#: 1006-07) filed notices of appeal to the Supreme Court of Ohio. In its memorandum in support of jurisdiction filed the same day, the State argued a single proposition of law:

> 1. Where there is evidence that a civil litigant has actual notice of a final appealable order, such notice begins the time for computing when a notice of appeal must be filed to invoke the jurisdiction of the appellate court. The requirement in Civ. R. 58 that service must appear in the docket does not apply where there is evidence that the litigant has actual notice of the final appealable order.

(ECF No. 67-1, PageID #: 981). On November 2, 2011, Tucker filed an amended memorandum that responded to the State's memorandum and argued a single proposition of law on cross-appeal:

> 1. A trial court violates the defendant's state and federal constitutional rights when it summarily dismisses a meritorious post-conviction petition or a motion for a new trial the filing of which was prompted by new evidence of actual innocence.

(ECF No. 67-1, PageID #: 1009). The State filed a responsive brief (ECF No. 67-1, PageID #: 1028-43), and on January 18, 2012, the Ohio Supreme Court denied leave to appeal and leave to

12

cross-appeal, and dismissed both as not involving any substantial constitutional question. (ECF No. 67-1, PageID #: 1044).

### F.     Evidentiary Hearing on Remand

On April 16, 2012, the trial court conducted an evidentiary hearing on Tucker's second state post-conviction petition and second motion for a new trial, at which D.R. testified. See *Tucker V*, 2013 WL 3156532, at *3. The trial court issued findings of fact and conclusions of law, and denied Tucker's state post-conviction petition and motion for new trial. (ECF No. 67-1, PageID #: 1047-53). Tucker appealed (ECF No. 67-1, PageID #: 1055), and raised two assignments of error in his brief:

1.     The trial court violated Mr. Tucker's constitutional right to due process and violated this court's order on remand by significantly narrowing the scope of his evidentiary hearing.

2.     The trial court violated Mr. Tucker's right to due process when it denied relief and a new trial notwithstanding the presentation of new evidence which provided credible support for his longstanding alibi.

(ECF No. 67-1, PageID #: 1067-92). The State filed a brief in opposition (ECF No. 67-1, PageID #: 1098-1131). On June 20, 2013, the appellate court affirmed the judgment of the trial court. *Tucker V*, 2013 WL 3156532; ECF No. 67-1, PageID #: 1132-51). Tucker filed an appeal with the Ohio Supreme Court on August 5, 2013 (ECF No. 67-1, PageID #: 1155-56), and raised two propositions of law in his memorandum in support of jurisdiction filed the same day:

1.     In the event a court allows an evidentiary hearing on … a petition for postconviction relief, the court violates Petitioner's rights to due process by narrowing the hearing's scope so that the petitioner is not permitted to present evidence supporting the credibility of the evidence to which the hearing is addressed.

2.     The trial court violates Petitioner's right to due process when it denies relief notwithstanding the presentation of new evidence which provided credible support for his longstanding alibi.

13

(ECF No. 67-1, PageID #: 1158). On November 20, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4). (ECF No. 67-1, PageID #: 1201).

### G.    Application for DNA Testing

In September 2014, Tucker submitted an application for DNA testing, with a memorandum in support. (ECF No. 67-1, PageID #: 1204-49). On March 11, 2019, after extensive litigation on the issue (*see* ECF No. 67-1, PageID #: 814-17 (docket sheets)), the trial court granted the State's motion to dismiss Tucker's application. (ECF No. 67-1, PageID #: 1250). Therein, the trial court noted that "as reflected in report dated 11/16/2017, 1/2017, by Lisa E. Moore, M.S. and Nasir A. Butt, Ph.D., the items in question were examined and found unsuitable for testing." (ECF No. 67-1, PageID #: 1250).

## IV.    Federal Habeas Corpus Petition

### A.    Original Petition

On February 16, 2007,[9] Tucker filed his first habeas petition *pro se*. He raised eight grounds for relief:

**Ground One:**    Petitioner was denied effective assistance of counsel.

**Supporting Facts:**    Important Pre-Trial Motions were not filed (Motion to Suppress), not investigating department procedures when Forensic's [sic] played a big part, failure to interview potential witnesses and statements that le[d] to the surprise evidence of a single photo shown, tainte[d] newspaper article and never a photo array.

---

[9] The Court ordered Tucker to submit a signed verification to the petition, to include a statement upon which the original petition was signed. (ECF No. 8). Tucker did so, stating he had originally signed the petition on approximately February 13, 2007. (ECF No. 10); *see also* (ECF No. 10-1, PageID 48). He also, however, requested that the Court use "the date of February 16, 2007 [the date the petition was filed with the Court], as the true petition filing date." (ECF No. 10, PageID #: 50).

14

**GROUND TWO:**    Court erred in repeatedly allowing damaging hearsay into the Trial.

**Supporting Facts:**    The Court lets state witness offer through impermissible hearsay, rumors and opinions. Over objections from defense Counsel[,] detectives and prosecutors offer hearsay from untestifiable [sic] witnesses which may have strengthened state['s] case, that rested solely on two shaky "Eye Witnesses."

**GROUND THREE:**    Petitioner was denied a fair trial due to prosecutorial misconduct.

**Supporting Facts:**    Prosecutor clearly produced a vindictive prosecution based on a prior conviction, misleading the Court and Jury. He purposely lied and twisted and convictions to suit his prosecution. Mr. Neff le[d] the Court and Jury to believe petitioner car-jacked a man (giving his name), in an attempt to show a violent history; failure to disclose exculpatory information which was requested in Discovery Motion which left defense Counsel unprepa[]red.

**GROUND FOUR:**    Conviction based on insufficient evidence and against the manifest weight of the evidence.

**Supporting Facts:**    State witness stories don't match, th[ey're] inconsistent with one another, their consumption of alcohol, distance from event, time period frame to give information which was threatened and coerced by detectives out of witnesses, the rapid and chaotic event that witnesses froze and "Distraught." In which all leads to hearsay and nothing concrete to support the conviction. Defense witnesses all gave a consistent testimony that petitioner was inside bar during the shooting. No weapons, or physical evidence exist that link petitioner to the shooting.

**GROUND FIVE:**    Courts permitted false testimony to go uncorrected. (Evidentiary Challenge).

**Supporting Facts:**    State['s] main witness (Joseph Fussell the third), falsely accused petitioner of a shooting that later resulted in an arrest, trial of lies and a conviction. Now thru a written, signed and notarized affidavit from Fussell recanting his testimony of petitioner being the shooter. An Evidentiary Hearing was granted by the trial judge John P. O'Donnell

15

but later vacated by the new presiding Judge Eileen Gallagher when Judge O'Donnell retired from his bench which now leaves this case closed due to false testimony, rumors and hearsay.

**GROUND SIX:**    Prejudicial toward proceeding.

**Supporting Facts:**    The Court clearly states denying petitioner['s 29 Acquittal Motion based on State['s] witness (Joseph Fussell the third), trial testimony was made to the Court saying "I think from his testimony to the fact of him saying, I can't believe someone could be that cold" contrary to the Court['s] reason, now having an affidavit from Mr. Fussell[,] a key witness[,] shows the fact stated in the Judge['s] reason for a denied Acquittal Verdict, shows that Fussell's comment played a big part on the Judge[']s verdict.

**GROUND SEVEN:**    Constitutional Challenge to Jury Selection Procedure.

**Supporting Facts:**    Defense Counsel refused to remove a former prosecutor from the Jury during voir dire in which petitioner found odd, being that Juror #3 (Mr. Weintraub), acknowledged that he knew trial prosecutor from former work establishment. Petitioner told defense Counsel to remove the Juror but Counsel stated "He had used all his exclusions for Jurors but would talk to the Judge." But to my acknowledgement the following day, Counsel tells petitioner, "It was too late, it's nothing he can do now" which now left petitioner with an unbalanced jury."

**GROUND EIGHT**[10]**:** Prosecutorial Misconduct.

**Supporting Facts:**    Prosecutor failed to uphold his duties in investigating the prior statement given when State[']s witness admit[]s on the stand that, the statement presented at trial wasn't what he told detectives, that they suggested the information in which he claims he told them. "He wasn't sure of what he saw", With detectives admitting on stand that he rewrote answers other than what witnesses told him. Detectives admitted that he failed when it came to following proper Police protocol (not testing for gun powder residue, not searching known residents and releasing the so called get away vehicle), which was evidence.

---

[10] Tucker's first petition contained a numbering error: He did not raise an eighth ground. Thus, "Ground Nine" was actually his eighth ground for relief. (*See* ECF No. 1, PageID #: 8-9).

(ECF No. 1, PageID #: 4-5, 8-9).

Respondent filed an Answer/Return of Writ. (ECF No. 13). The then-assigned magistrate judge recommended the Petition be dismissed as untimely-filed. (ECF No. 16). The district judge adopted the recommendation on March 16, 2010 (ECF No. 18) over Tucker's objection (ECF No. 17).

Through counsel, Tucker filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b), with a request to stay and abey proceedings (ECF No. 20), which Respondent opposed (ECF No. 23), and to which Tucker replied in support (ECF No. 24). A subsequently assigned magistrate judge issued a recommendation that Tucker's motion be denied (ECF No. 28), to which Tucker objected (ECF No. 29). In June 2011, the district court rejected the recommendation, granted the motion for relief from judgment, re-opened the case, and stayed it pending exhaustion of proceedings in state court. (ECF Nos. 30, 31).

### B. Amended Petition

The case remained stayed until Tucker moved to reopen it in Late 2013. (ECF No. 33). On May June 30, 2014, Tucker amended his petition to issue a writ of habeas corpus compelling his release. (ECF No. 40, PageID #: 541-61). Tucker asserted two grounds for relief:

**Ground One:**  Trial counsel provided ineffective representation because he failed to mount a meaningful challenge to the prosecution's case or to investigate, develop and present evidence that would have corroborated his client's defense.

    **A.**  Trial counsel failed to challenge Beal's identification evidence in this case in a pretrial motion to suppress;

    **B.**  Trial counsel was ineffective for failing to call or consult a Memory Expert to help the jury understand the limits and complexities of eyewitness identification evidence;

      **C.**     Trial counsel was ineffective for failing to investigate this case, interview identified witnesses, and present additional evidence in support of Tucker's alibi defense;

      **D.**     Counsel failed to interview even individuals identified as potential prosecution witnesses;

      **E.**     Counsel failed to undertake an independent investigation of the shooting and scene.

**Ground Two:**     The trial court violated Mr. Tucker's right to due process and a fair hearing by significantly and unjustifiably narrowing the scope of the post-conviction evidentiary hearing the court of appeals ordered based on new evidence which supported his claim that he was innocent of Austin's murder.

(ECF No. 40, PageID #: 549-60).

On September 16, 2014, Tucker filed a motion to stay proceedings in order to permit him to pursue state post-conviction DNA testing. (ECF No. 43). Pursuant to consent of the parties, the then-assigned magistrate judge granted the stay. (ECF No. 46). Tucker, proceeding *pro se*, filed a motion to lift the stay on May 1, 2019 (ECF No. 62), which the then-assigned magistrate judge granted. (ECF No. 63).

Respondent filed its answer and return of writ to Tucker's amended petition on November 12, 2019. (ECF No. 67). Tucker moved the Court for an extension of time to submit his traverse. (ECF No. 68). The then-assigned magistrate judge granted the extension, giving Tucker until February 2, 2020, to submit it. (Non-document order dated 12/20/2019). Tucker did not file his traverse by that date. (*See* ECF No. 69, PageID #: 2098 (vacated by ECF No. 72)). Accordingly, on February 18, 2020, the then-assigned magistrate judge issued a Report and Recommendation, denying relief to Tucker on all grounds. (ECF No. 69).

Tucker, however, had attempted to mail his traverse to the Court on or about January 28, 2020, but mailed it to a Columbus, Ohio, address, rather than to this district's clerk of courts. (ECF

No. 70, PageID #: 2112-14). Thus, he moved the Court for an extension of time to file his traverse, arguing that the Court would have received it in time had he addressed it properly. (ECF No. 70, PageID #: 2112). Tucker attached his traverse[11] to the motion. (ECF No. 70-1). On November 30, 2020, the district judge gave Tucker "the benefit of the doubt," granting Tucker's motion and vacating the February 2020 R&R, and referring the case to the undersigned magistrate judge for further consideration of the merits in light of the traverse. (ECF No. 72, PageID #: 2136-37).

On December 9, 2020, the undersigned deemed Tucker's traverse filed as of November 30, 2020, and gave Respondent until January 8, 2021, to file a reply (if any). (Non-document order dated 12/9/2020). Respondent did not do so.

## V.      Legal Standards

### A.      Jurisdiction

28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga County sentenced Tucker, and Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Tucker's § 2254 petition.

### B.      Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A

---

[11] Tucker entitled his traverse "Petitioner's Response to Respondent's Motion to Dismiss." (ECF No. 73, PageID #: 2138).

petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law ... are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th 1998).

**C.      AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C.

§ 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

VI.     **Discussion**

A.     **The Amended Petition's Procedural Posture**

Before discussing the merits of Tucker's petition, the Court notes that Tucker briefly addresses in his traverse (which he submitted *pro se*) his original eight grounds for relief and the

timeliness issues that Respondent raised to them. (*See* ECF No. 73, PageID #: 2140-45). "An amended pleading supersedes a former pleading if the amended pleading 'is complete in itself and does not refer to or adopt a former pleading…'" *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016) (quoting *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 131 (6th Cir. 2014)). This is the case even for habeas petitions. *Id.*

There are two exceptions to this rule: (1) "where a party evinces an intent for the amended pleading to supplement rather than supersede the original pleading"; and (2) "where a party is forced to amend a pleading by court order." *Id.* Neither exception applies here. First, Tucker does not refer to or adopt his original petition in his amended petition. (ECF No. 40). And second, Tucker voluntary moved under Fed. R. Civ. P. 60(b) to reopen his habeas case to amend his petition—he was not ordered to amend his petition. (*see* ECF No. 22 ("The claims that underlie this case are meritorious. This Court should permit Mr. Tucker the opportunity to develop and fully present them—*with the assistance of counsel*—before resolving their merits (emphasis added))). Accordingly, the Court will consider only the two grounds raised in Tucker's amended petition. Relatedly, based on the District Court's order to reopen Tucker's petition, the Court will not consider any arguments that Tucker's original petition was untimely. (*C.f.* ECF No. 30, PageID #: 518-19 (calling Tucker's reason for his delayed habeas filing "good cause" and vacating the earlier adverse opinion and order based on timeliness arguments)).

## B.    Ground One

In Ground One, Tucker alleges that his trial counsel was constitutionally ineffective. (ECF No. 40, PageID #: 549-57). He raises five separate ineffective-assistance-of-trial-counsel claims:

I.    Trial counsel failed to challenge Beal's identification evidence in this case in a pretrial motion to suppress;

II.     Trial counsel was ineffective for failing to call or consult a
        Memory Expert to help the jury understand the limits and
        complexities of eyewitness identification evidence;

III.    Trial counsel was ineffective for failing to investigate this
        case, interview identified witnesses, and present additional
        evidence in support of Tucker's alibi defense;

IV.     Counsel failed to interview even individuals identified as
        potential prosecution witnesses;

V.      Counsel failed to undertake an independent investigation of
        the shooting and scene.

(ECF No. 40, PageID #: 550-57). Hereinafter, the Court refers to these as sub-grounds.

### 1.     Tucker's Five Ineffective-Assistance-of-Trial-Counsel Claims Are Procedurally Defaulted

Respondent argues that each of Tucker's five ineffective-assistance-of-trial-counsel claims
are procedurally defaulted; thus, Tucker must overcome that procedural hurdle before the Court
can consider the merits of this ground. (ECF No. 67, PageID #: 783-85). Concerning trial counsel's
purported failure to suppress Beal's testimony, Respondent notes that while Tucker raised this
argument before the Ohio Court of Appeals, he failed to timely appeal that court's adverse decision
to the Supreme Court of Ohio. (ECF No. 67, PageID #: 783). Concerning Tucker's four other
ineffective-assistance-of-trial-counsel claims, Respondent notes that they were never fairly
presented to the Ohio Court of Appeals (ECF No. 67, PageID #: 785).

In his traverse, Tucker succinctly summarizes the procedural default standard, noting that
it is a "[p]rocedural barrier[ that] … limit[s] access to review of the merits of a constitutional
claim." (ECF No. 73, PageID #: 2149 (quoting *Daniels v. United States*, 532 U.S. 374, 381
(2001))). He does not argue in either his petition or traverse, though, that any of the ineffective-
assistance-of-trial-counsel claims are not procedurally defaulted. (ECF No. 40; ECF No. 73).

24

A claim will be considered procedurally defaulted in either of the two following circumstances. First, a procedural default occurs if "(1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim…" *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.2010) (*en banc*). This standard was articulated in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "The second prong of this test requires that the state courts actually enforce the state procedural rule in denying relief." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) (quotations omitted). In other words, "it is not sufficient that the state court could have applied a procedural default under state law; it must actually have done so." *Id.* But the state court need only indicate in its decision that it applied the rule by a *plain statement*, *i.e.*, clearly and expressly. *Id.* (citing *Michigan v. Long*, 463 U.S. 1032 (1983)).

Second, a procedural default occurs if the petitioner "fail[s] to raise the claim in state court and pursue it through the state's 'ordinary appellate review procedures,' if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim." *Hale v. Shoop*, No. 1:18-CV-504, 2021 WL 1215793, at *16 (N.D. Ohio Mar. 31, 2021) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)). To preserve a federal constitutional claim for habeas relief, the legal and factual basis of the claim must be "fairly presented" to the state courts so that they have an opportunity to remedy the alleged constitutional violation. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006). "To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his or her claim." *Id.* Ordinarily, a federal claim is not "fairly presented" to a state court if that court must read beyond the filings to alert it such a claim. *Baldwin v. Reese*, 541 U.S. 27, 31–32 (2004). The following factors indicate that a federal constitutional claim was fairly presented to the state courts:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir.2004) (citation omitted). Relatedly, "a claim [must] be presented to the state courts under the same theory in which it is later presented in federal court." *Wong*, 142 F.3d at 322.

The Court concludes that each of Tucker's five ineffective-assistance-of-trial-counsel claims are procedurally defaulted.

### a.    Sub-Ground One

The first ineffective-assistance-of-trial-counsel claim is procedurally defaulted because Tucker failed to raise this issue to all levels of the state courts. After his direct appeal, Tucker sought to appeal *pro se* to the Supreme Court of Ohio, but his appeal was untimely, and that court denied Tucker's request for leave to file his appeal after the deadline. (ECF Nos. 13-10, 13-11). That court refused to hear Tucker's appeal because it was untimely, and it stated such by a plain statement. (ECF No. 13-12, PageID #: 67). Failing to timely notice an appeal to the Ohio Supreme Court is an adequate procedural ground upon which to foreclose federal habeas review. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Thus, the first ineffective-assistance-of-trial-counsel claim is procedurally defaulted under *Maupin*. 785 F.2d at 138.

### b.    Sub-Grounds Two, Four, and Five

Tucker's second sub-ground (failure to call or consult a memory expert), fourth sub-ground (failure to interview prosecution witnesses), and fifth sub-ground (failing to investigate the crime scene) all specifically state that Tucker's trial counsel provided constitutionally ineffective

assistance. None of Tucker's other state court arguments, though, reasonably relates to these sub-grounds.[12] Thus, these sub-grounds are also procedurally defaulted.

Ohio has a "dual-track system" for ineffective assistance of counsel claims. *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016); see also *McGuire v. Warden*, 738 F.3d 741, 751 (6th Cir. 2013). Under this dual-track system, grounds for relief that are based on evidence wholly within the trial record must be brought on direct appeal, while claims based on evidence outside the trial record cannot be brought on direct review and must be raised in a petition for state post-conviction relief. *McGuire*, 738 F.3d at 751 (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)). In this system, *res judicata* bars an ineffective-assistance-of-trial-counsel claim that is brought in a state post-conviction petition that relies on evidence within the trial record because such a claim could have been brought on direct appeal. *Id.* (citing *State v. Perry*, 226 N.E.2d 104, 108 (1967)). Ohio courts routinely apply *res judicata* to such claims. *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)) ("Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.")

To the extent that Tucker's second, fourth, and fifth sub-grounds are based on evidence within the trial record, they are procedurally defaulted because Tucker did not raise them on direct appeal. *See, e.g.*, *McGuire*, 738 F.3d at 751 (citing *Cole*, 443 N.E.2d at 171). Although Tucker raised an ineffective-assistance-of-trial-counsel claim on direct appeal (discussed above), he did not do so on the factual bases contained in these sub-grounds. *See Wong*, 142 F.3d at 322 (noting that a ground for relief must "be presented to the state courts under the same theory in which it is

---

[12] Later in the appeals process, Tucker supplemented his first petition for state post-conviction relief (through counsel), raising additional grounds for relief, none of which were ineffective-assistance-of-trial-counsel claims. (ECF No. 13-23). Tucker then filed a second petition for state post-conviction relief, none of which were ineffective-assistance-of-trial-counsel claims, either. (ECF No. 67-1, PageID #: 797-99).

later presented in federal court"). He never raised these arguments in his direct appeal, the time at which it was appropriate for him to do so.

To the extent that Tucker's second, fourth, and fifth sub-grounds are based on evidence outside the trial record, they are procedurally defaulted for failure to raise them in post-conviction proceedings. Tucker simply never raised these arguments in his state post-conviction petitions.

Because Tucker did not fairly present sub-grounds two, four, or five to the state courts, they too are procedurally defaulted. *Williams*, 460 F.3d 806; *see also Wong*, 142 F.3d at 322 ("[A] claim [must] be presented to the state courts under the same theory in which it is later presented in federal court.").

### c.    Sub-Ground Three

Sub-ground three, on the other hand, at least plausibly relates to a prior argument. In sub-ground three, Tucker states that his "[t]rial [c]ounsel was ineffective for failing to investigate this case, interview identified witnesses, and present additional evidence in support of Tucker's alibi defense." (ECF No. 40, PageID #: 553). And in his first *pro se* motion for state post-conviction relief, Tucker asserted that his trial counsel "refused to call witnesses requested by [Tucker] that may have supported [Tucker's] alibi…" (ECF No. 13-14, PageID #: 166). Still, looking closely at Tucker's first petition for state post-conviction relief demonstrates that Tucker did not fairly present any of the claims that he now raises in this sub-ground.

To fairly presented an argument, a petitioner must "phrase the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question…" *Hicks*, 377 F.3d at 553. That includes the factual basis of the claim, too. *Williams*, 460 F.3d at 806. But in his petition for state post-conviction relief, Tucker did only two things to explain and present his argument: (1) title his ground for relief "Ineffective

28

Assistance of Counsel (trial counsel)"; and (2) state that "Counsel refused to call witnesses requested by defendant that may have supported his alibi…" (ECF No. 13-14, PageID #: 166). He did not provide any evidence or affidavits to support his claim that his trial counsel refused to call certain witnesses that Tucker told him to call. (ECF No. 13-14, PageID #: 166). Nor did Tucker list whom he had apparently requested that his counsel interview or call as a trial witness. (ECF No. 13-14, PageID #: 166). This falls below the specificity required to fairly presented a claim to the state courts. *Hicks*, 377 F.3d at 553; *Williams*, 460 F.3d at 806. And in any case, Tucker did not appeal this claim to the Supreme Court of Ohio after failing to file a timely appeal to the Ohio Court of Appeals. (ECF Nos. 13-30, 13-31, 13-32). Thus, Tucker also failed in his obligation to fairly present this argument to all levels of the state courts (*Williams*, 460 F.3d at 806), whether or not sub-ground three is based on evidence within or outside of the record.

Because Tucker did not fairly present sub-ground three to the state courts, it too is procedurally defaulted. *Williams*, 460 F.3d 806; *see also Wong*, 142 F.3d at 322 ("[A] claim [must] be presented to the state courts under the same theory in which it is later presented in federal court.").

*  *  *

Accordingly, each ineffective-assistance-of-trial-counsel claim is procedurally defaulted.

## 2. Tucker Has Not Demonstrated Cause or Prejudice that Would Excuse His Procedural Defaults

Despite being procedurally defaulted, federal habeas courts can review procedurally defaulted claims if the petition "can show cause for failure to follow the rule and prejudice resulting therefrom." *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) (citing *Poindexter v. Mitchell*, 454 F.3d 564, 583 (6th Cir.2006)); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Respondent asserts that Tucker has not and cannot establish either element. (ECF No. 67, PageID #: 785-86).

Respondent notes that Tucker did not explain "why he did not fairly present [his] claims to the Ohio Courts [of Appeals]." (ECF No. 67, PageID #: 785). Respondent also notes that Tucker "cannot blame ineffective assistance of appellate counsel because he has never fairly presented such a claim to the Ohio courts," and such an argument here "would itself be procedurally defaulted." (ECF No. 67, PageID #: 785 (citing *Edwards v. Carpenter*, 529 U.S. 446 (2000))).

In his traverse, Tucker notes that demonstrating cause to excuse the procedural default and prejudice resulting from the constitutional violation is necessary "[t]o overcome [this] … procedural bar…" (ECF No. 73, PageID #: 2150). Despite stating the standard, Tucker does not analyze his claim under it. Instead, Tucker summarizes the ineffective-assistance-of-trial-counsel test under *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. (ECF No. 73, PageID #: 2151-53). He then summarily states that he "is asserting [that] … his [d]efense [c]ounsel's performance failed to [rise to] the level of reasonableness." (ECF No. 73, PageID #: 2152).

Tucker's argument for cause is, at bottom, his merits argument for this entire ground—ineffective assistance of trial counsel. But that reason does not establish the cause that is required here because cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2007) (citations omitted). Similarly, it is well established that "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Id*. (quotation omitted) (noting also that the petitioner must offer "more than the mere proffer of an excuse" to satisfy the standard). By merely restating the principle behind his merits argument in conclusory statements, Tucker has not alleged that

some external factor impeded his or his counsel's ability to raise these issues before the state courts.

Constitutionally ineffective assistance from appellate counsel on direct appeal can satisfy the cause prong in certain situations (so long as that rationale, too, is not procedurally defaulted).[13] But as Respondent notes, Tucker has not raised that argument. While Tucker's traverse attributes the ineffective assistance to his "defense counsel"—which could potentially refer to either trial or appellate counsel—context demonstrates that Tucker continues to argue that only his trial counsel was constitutionally ineffective, as Tucker discusses only his trial counsel's performance in his petition (*See generally* ECF No. 40) and never mentions his appellate counsel's performance in his traverse. (*See generally* ECF No. 73). And even if he were to argue in his traverse that his appellate counsel was constitutionally ineffective, that argument would itself be procedurally defaulted because Tucker had not fairly presented it to the state courts. *Edwards*, 529 U.S. at 450-51.

The Court concludes that Tucker has not established cause. Because he has not established cause, the Court need not analyze whether Tucker has suffered prejudice[14] at this time.

---

[13]  *See Edwards*, 529 U.S. at 450-51 (stating "that a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself"); *see also Trevino v. Thaler*, 569 U.S. 413 (2013) (stating that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," even if "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal").

[14]  Prejudice "must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines." *Maupin*, 785 F.2d at 139. Courts do not consider "whether any prejudice resulted from the actual procedural default." *Id*. The petitioner bears the burden of demonstrating prejudice. *Id*.

**3.     Tucker's Actual Innocence Claim Is Insufficient to Get Him Through the Procedural Default Gateway**

Tucker's main argument[15] in his traverse is that he is *actually innocent*, a stance that he has taken from the beginning of his criminal case. (*See* ECF No. 40, PageID #: 541 (stating in his petition that he is "serving a life sentence for a murder [that] he did not commit" and that "he has never been allowed to present a great deal of the evidence he has developed, which supports his innocence")). Tucker further expounds on this standard at the end of his traverse. Tucker cites *Lundgren*, a case that provides that, "[i]n the absence of cause and prejudice, a petitioner may demonstrate that the [habeas court's] failure to consider the claims [because of the procedural-default procedural bar] will result in a fundamental miscarriage of justice." 440 F.3d at 764. Tucker notes that, under the Supreme Court's holding in *Murray v. Carrier*, "'[a] fundamental miscarriage of justice results from the conviction of one who is actually innocent.'" (ECF No. 73, PageID #: 2151 (quoting *Lundgren*, 440 F.3d at 764)). He also notes that *actual innocence* is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." (ECF No. 73, PageID #: 2154 (quoting *Schlup v. Delo*, 513 U.S. 298,

---

[15] In addition to the *actual innocence* standard, Tucker quotes and discusses Fed. Crim. R. 52(b), the *plain error* doctrine for federal criminal cases. (ECF No. 73, PageID #: 2148-49, 2152-53). He also cites Ohio cases concerning Ohio's plain error rule, Ohio Crim. R. 52(b). (ECF No. 73, PageID #: 2152-53). Tucker appears to ask the Court to review his claims under that doctrine, in addition to the well-established cause and prejudice standard for § 2254 cases under *Sykes*, 433 U.S. at 87. (*See* ECF No. 73, PageID #: 2149 ("[T]he petitioner should be allowed to have his Petition reviewed by this Court based on the fact of Plain Error…"); 2152 ("[T]he [p]etitioner herein[] has claimed plain error as a fundamental and Constitutional principle that must be applied in his Habeas Corpus Petition…"); and 2153 ("This case is ripe for judicial review on the plain error analysis…")). That argument is meritless because the Supreme Court long ago rejected the *plain error* standard in § 2254 cases and, instead, continues to endorse the *Sykes* cause-and-prejudice standard. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) ("The burden of demonstrating that a [constitutional violation] was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment [under *Sykes*] is even greater than the showing required to establish plain error on direct appeal.").

315 (1995))). Thus, Tucker argues that the Court should review the merits of his petition despite his having procedurally defaulted Ground One.[16]

Respondent argues, however, that Tucker has failed to demonstrate that a miscarriage of justice has occurred in this case. (ECF No. 67, PageID #: 787-88). Respondent notes that D.R.'s testimony at the evidentiary hearing was cumulative and suffered from reliability concerns. (ECF No. 67, PageID #: 787-88). With those reliability concerns in mind, Respondent asserts that "a reasonable juror could consider D.R.'s affidavit and testimony and still find Tucker guilty beyond a reasonable doubt." (ECF No. 67, PageID #: 788). Respondent thus argues that "this is not an 'extraordinary' case of actual innocence." (ECF No. 67, PageID #: 788).

"The one exception to th[e procedural default] rule … is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards*, 529 U.S. at 451 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. "In assessing the adequacy of [a] petitioner's showing, … the district court is not bound by the rules of admissibility that would govern at trial." *Id.* (quotations omitted). Put another way: "The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence

---

[16] Tucker's final sentence on this argument states that "[r]eview of the record fails to establish that Petitioner can meet this standard here." (ECF No. 73, PageID #: 2154). Under the guidance of *Urbina*, 270 F.3d at 295, the Court construes that statement as a typo; context demonstrates that Tucker is arguing that he can meet the actual-innocence standard.

tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 328 (quotations omitted).

With that said, the "habeas court reviewing a claim of actual innocence does not write on a clean slate":

> The reviewing court must somehow predict the effect that this new evidence would have had on the deliberations of reasonable jurors. It must necessarily weigh this new evidence in some manner, and may need to make credibility determinations as to witnesses who did not appear before the original jury. This new evidence, however, is not a license for the reviewing court to disregard the presumptively proper determination by the original trier of fact.

*Id.* at 340 (Rehnquist, C.J., dissenting). Accordingly, the Sixth Circuit has held that "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). New evidence does not excuse a procedural default unless it is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin v. Perkin*, 569 U.S. 383, 401 (2013). New evidence, consequently, will excuse a procedural default only in "extraordinary" cases. *Carter*, 443 F.3d at 538. Conclusory statements of innocence are not enough: A petitioner must "support his allegations of constitutional error with new, reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The Supreme Court has emphasized that "[i]t bears repeating that the Schlup standard is *demanding…*" *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasis added).

Throughout his petition, Tucker identifies many pieces of evidence that he presented (or attempted to present) in his state court post-conviction proceedings. These include: 1) Fussell's

recantation of his identification of Tucker; 2) D.R.'s later-discovered testimony that Tucker was within her vicinity inside the bar at the time of the shooting; 3) expert testimony regarding the reliability of Beal's and Fussell's eyewitness testimonies; and 4) later-discovered evidence of other witnesses, including John Blue, Joe McLemore, Khaalis Miller, and Arthur Storey, who testified or gave statements that either placed Tucker inside the bar at the time of the shooting or incriminated someone other than Tucker as Austin's shooter. (*See* ECF No. 40, PageID #: 554-59). While this evidence may collectively support Tucker's alibi—that he was inside the bar during the shooting—the Court concludes that it does not demonstrate Tucker's actual innocence under the demanding *Schlup* standard.

### a.  Fussell's Recantation Affidavit

Looking first at Fussell's identification recantation, the Court notes that recantation testimony is to be "'viewed with great suspicion'" because it "'is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction.'" *Carter*, 443 F.3d at 539 (quoting Justice Brennan's dissent from the denial of certiorari in *Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984)). In his recantation, Fussell stated that he was "writing … to tell the truth about what I said [that] I saw last year in May at Whatley's Bar is not what I really saw. I was mistaken[;] it was not Christopher Tucker."[17] (ECF No. 13-16, PageID #: 153).

---

[17] In *Tucker V*, the Ohio Court of Appeals noted that Tucker had "attempted to include a more expanded affidavit by Joseph Fussell" before that court decided *Tucker IV*. *Tucker V*, 2013 WL 3156532, at ¶14. That expanded affidavit does not readily appear in the record, nor has Tucker directed the Court to it. (*See, e.g.*, ECF No. 40, PageID #: (stating without citing to the record that "[a] further interview with Joseph Fussell expanded upon and clarified his previous recantation")). Thus, the Court can analyze only the quoted recantation.

Fussell's statement is, at best, conclusory. It does not explain the circumstances that led him to recant, nor does it offer what Fussell *did* see instead of what he testified at trial occurred. Moreover, Tucker asserts (without citing to the record) that Fussell "has … admitted to having been high on PCP that night, which would have undermined the credibility and reliability of his identification." (ECF No. 40, PageID #: 554). While Tucker's analysis as to Fussell's credibility at trial might be well reasoned, Fussell's admission that he was intoxicated cuts *against* the reliability of his later-in-time recantation, too. And in any case, Beal has not recanted her testimony[18]; thus, the jury would still have her direct eyewitness testimony before it on consideration.

Looking at Fussell's recantation skeptically as per the Sixth Circuit's guidance, the Court concludes that a reasonable juror could still find Tucker guilty of aggravated murder even in light of Fussell's recantation. *Schlup*, 513 U.S. at 327.

---

[18] In his supplemental petition for postconviction relief in state court, Tucker attacked Beal's testimony as subsequently recanted, stating that

> Beal has since explained that she did not learn that Mr. Tucker was a suspect until the East Cleveland detective planted the thought in her mind. Indeed, Ms. Beal has since told others that she panicked and ran once the shooting began. Ms. Beal never saw the shooting or the shooter as she fled the scene. Among the people [whom] Ms. Beal confessed to is Ms. She[niece] Austin of East Cleveland.

(ECF No. 13-23, PageID #: 81). That argument is unpersuasive and unreliable because Tucker has never submitted from Beal an affidavit to that effect. Moreover, Tucker focusing his attack on Beal's testimony on his trial counsel's failure to suppress her photo identification, asserting that it was elicited under coercive circumstances. (*See* ECF No. 40, PageID #: (550-51)). Thus, Tucker appears to have abandoned the argument that Beal credibly recanted her testimony.

b.     **D.R.'s Affidavit and Evidentiary Hearing Testimony**

D.R. gave a sworn statement on April 2, 2007, to Brian Moriarty, an attorney who was working on Tucker's case at the time. She stated that she did not know Tucker or his family, but that she had got involved after seeing a flyer that featured Tucker's name and picture and a narrative that described his allegedly wrongful conviction. (ECF No. 67-1, PageID #: 801). She stated that she was at Whatley's Lounge on the night that Austin was shot and that she "was sitting close to Christopher Tucker[,] who was playing a video game on the bar the night of the shooting." (ECF No. 67-1, PageID #: 801). D.R. stated that Tucker

> got up to play music[,] and [she] asked him if he was finished playing the videogame. He said 'no,' and that he was just going to play music. [She] joked that he should play a song for [her,] and [she] asked him again if he was done playing. While he was walking back to his seat at the bar/videogame, [they] all heard shots outside…. [They] all heard sirens[;] everyone[,] including [she] and Christopher Tucker, put on [their] coats and walked out [of] the front door.

(ECF No. 67-1, PageID #: 801). D.R. then asserted that she "observed Christopher Tucker getting into his car with his friends to leave"; thus, she "know[s] for a fact" that Tucker did not shoot Austin. (ECF No. 67-1, PageID 802). D.R. then testified to these facts during Tucker's evidentiary hearing. *Tucker V*, 2013 WL 3156532, at ¶¶ 16-17.

As an initial point, the Court agrees with the Ohio Court of Appeals that D.R.'s testimony is, in many ways, cumulative of what Tucker already presented in his trial. As the Ohio Court of Appeals summarized it in *Tucker V*,

> At trial, Tucker maintained [that] he was inside the bar during the shooting and presented witnesses, who were also his friends, in support of his alibi. One of his friends, Lahondra Hill, originally told police that Tucker was outside when the shootings occurred but later changed his testimony at trial. Tucker's other friend, Stefan King, did not provide police with a statement. However, he testified at trial that Tucker was inside the bar…

37

2013 WL 3156532, at ¶ 5. D.R. is an additional alibi witness—albeit a more neutral one than Tucker's family or friends—to support Tucker being inside the bar when Austin was shot. Indeed, D.R.'s testimony directly contradicts Beal's identification testimony. But Beal, who testified that she was right next to Austin when he was murdered, had the best opportunity to witness the shooting and identify the assailant—facts to which she testified at trial—and Tucker has not argued here the Beal has recanted her testimony, only that it was unreliable. At best, then, D.R.'s testimony could cast doubt on Beal's testimony.

Looking to its reliability, "[t]estimony of actual innocence from those with 'no evident motive to lie … has more probative value than, for example, incriminating testimony from inmates, suspects, or friends or relations of the accused.'" *Cleveland v. Bradshaw*, 693 F.3d 626, 640 (6th Cir. 2012) (quoting *House*, 547 U.S. at 552. Additionally, "[o]ne discrepancy [in an affidavit] is not sufficient to render the entire affidavit unreliable." *Id.* Nor does "the passage of time" on its own render it unreliable. *Id.* at 641. Despite this, the Court concludes that D.R.'s testimony suffers from reliability and trustworthiness concerns.

The trial court noted that there were important inconsistencies between D.R.'s affidavit and her in-person testimony at the state court post-conviction evidentiary hearing that affected the overall reliability of her testimony:

> {¶ 18} … The [trial] court noted [that] D.R. had only spoken with Tucker for a "split second" and had stated that Tucker was wearing a Chief Wahoo jacket, when the evidence indicated he was wearing a blue Phat Pharm jacket. In her affidavit, D.R. also stated that she saw Tucker get into a car with his friends and leave, while at the hearing she stated she saw Tucker get into his car and "assumed" he left.

> {¶ 19} Finally, the [trial] court concluded that D.R.'s identification was suspect because although she identified Tucker from the flier

38

> photograph, she could not identify Tucker from a more recent
> photograph that she referenced in her affidavit.

*Tucker V*, 2013 WL 3156532, at ¶¶ 18-19. The trial court thus found that that D.R.'s testimony was not sufficiently credible to order a new trial, and the Ohio Court of Appeals affirmed that finding. *Id.* at ¶ 44. The Court agrees with the state courts' analyses and raises three additional reliability concerns relating to D.R.'s memory of that night.

First, the Court has questions about D.R.'s memory of Tucker's actions and statements in light of the crowded bar. While testifying, D.R. noted that there were upwards of 40 other people at Whatley's that night (ECF No. 67-5, PageID #: 1982); that she was at Whatley's for about an hour before she met Tucker (ECF No. 67-5, PageID #: 1968); and that she was "mingling" with the other patrons that night during that time. (ECF No. 67-5, PageID #: 1985). This calls into question why D.R. specifically remembered Tucker, whom she admitted that she had spoken to in passing and only briefly. (ECF No. 67-5, PageID #: 1968, 1971-72); (*see also* ECF No. 67-5, PageID #: 1993 (testifying that her conversation with Tucker lasted a "[s]pit second… Like, we didn't' have a conversation, no, so maybe a quick second")). Moreover, D.R. noted that everyone in Whatley's rushed out after the shooting, and that she was not with Tucker at that time, but that he was a tall person somewhere in front of her as she exited. (ECF No. 67-5, PageID #: 2009-10). This casts doubt on the assertion in her affidavit concerning her knowledge that she saw Tucker put on his coat and walk out of Whatley's' door. (ECF No. 67-1, PageID #: 801).

Second, the Court questions D.R.'s memory of Whatley's bar and the interactions that she had with Tucker and others there. D.R. admitted that her first and only time at or inside Whatley's was the night on which Austin was shot. (ECF No. 67-5, PageID #: 1984). Despite her limited experience with the venue, D.R. painted for Tucker's attorney a clear and complex picture of Whatley's' interior on direct examination, including a sharp description of where she and Tucker

sat and had interacted and where the jukebox was that Tucker went to use when Austin was shot. (ECF No. 67-5, PageID #: 1972-78). The trial judge noted, however, that D.R.'s testimony about Whatley's' interior was at times contradictory; D.R. replied that she was confused with the chalk-board illustration that Tucker's attorney had used, but that she had reoriented herself after that comment. (ECF No. 67-5, PageID #: 1977-78). And on cross examination, the State sought to impeach her impressive memory of the events, Whatley's interior, and interacting with Tucker; in support, D.R. stated that she had "been over the years … back and forth[,] speaking with different attorneys and whoever finds me and wants to talk to me about this…" (ECF No. 67-5, PageID #: 1985). In total, these exchanges cast doubt on D.R.'s sometimes cloudy and sometimes crystal-clear memory of Whatley's and Tucker.

Finally, the Court questions the fidelity of the origin of D.R.'s memories about Tucker. On cross examination, the State elicited testimony concerning D.R.'s memory of Tucker's visage and what caused her to reach out to Tucker's defense team. D.R. first saw Tucker's flier at another bar much later. (ECF No. 67-5, PageID #: 1987). D.R. testified that when she first saw Tucker's picture on the flier, she thought that "someone had passed away. Maybe someone got killed, and this [wa]s their picture…" (ECF No. 67-5, PageID #: 1988). She then read to herself the passage explaining that Tucker was wrongfully convicted based on testimony from "coached witnesses" and "no physical evidence." (ECF No. 1987-88). She then began to remember his face as the man whom she had spoken with that night. (ECF No. 67-5, PageID #: 1988). When asked directly whether "it was the rest of the writing on the [flier] … that made [her] think [back] to Whatley's bar," D.R. said "yes." (ECF No. 67-5, PageID #: 1989). And when the State pressed the issue further, asking "how a conversation that you even say was a split second, how that left such an imprint on you…," D.R. replied,

> Well, like I said, I saw the flier. His picture reminded me of his face from seeing him before. Still[,] at the time[,] I did not know [that] I saw him in … Whatley's bar until I got to reading [the flier] and remembering the date[,] like[,] all of us in the bar. I remember being inside the bar… I've been looking at this flier back and forth[,] talking to different people [about it]. I'm familiar with what's been going on.

(ECF No. 67-5, PageID #: 1995-96). This portion of D.R.'s testimony reasonably calls into question the degree to which the flier affected D.R.'s memory of the night in question. As Tucker noted in his petition, the effect of post-event information on one's memory can affect that memory's veracity. (ECF No. 40, PageID #: 553 (stating that "[w]itnesses often graft the face from the post-event information into the memory of the original event itself")).

Ultimately, the Court agrees with the Ohio courts that D.R.'s testimony raises credibility concerns. Because of these concerns, the Court concludes that a reasonable juror could still convict Tucker were this evidence before them. Accordingly, D.R.'s testimony does not establish Tucker's actual innocence. *Schlup*, 513 U.S. at 327.

### c.    Zarazoga's Expert Testimony on Memories and Identification

Tucker also discusses at length the possibility that expert testimony at trial from a memory expert, such as Maria Zarazoga, Ph.D., would have placed Beal's and Fussell's eyewitness testimony "in an entirely new and very different light." (ECF No. 40, PageID #: 552). Tucker then explains the difficulties surrounding eyewitness identifications, particularly in high-stress and high-fear situations. (ECF No. 40, PageID #: 552-53). He then explains that "[a] witness like Professor Zaragoza would also have explained why, notwithstanding the confidence with which Nikia Beal identified Chris Tucker as the shooter, such confidence is unrelated to the accuracy of the witness and tends to increase over time," and that she "would have also explained the impact of post-event information such as Beal's reading up on the shooting on the internet, learning the

41

alleged shooter's name, and associating that name with a single photograph." (ECF No. 40, PageID #: 552-53).

The Court agrees that "[e]yewitness identification testimony is recognized as often being less than reliable... [indeed,] that, 'the jurisprudence and legal scholarship have well established that while eyewitness testimony has a profound impact on juries, it is often times extremely unreliable.'" *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 774 (N.D. Ohio 2003) (quoting *Moss v. Hofbauer*, 286 F.3d 851, 874 (6th Cir.2002) (J. Clay dissenting and citing *Watkins v. Sowders*, 449 U.S. 341 (1981)). Similarly, it is well known that "'[e]yewitness identification by strangers based upon fleeting observations made in stressful circumstances are frequently inaccurate.'" *United States v. Bentley*, 726 F.2d 1124, 1130 (6th Cir. 1984) (quoting *Eberhardt v. Bordenkircher*, 605 F.2d 275, 279 (6th Cir.1979)).

Nevertheless, this district has said that impeachment evidence "is not enough to present a valid claim of actual innocence." *Glover v. Morgan*, No. 1:12 CV 267, 2013 WL 821462, at *15 (N.D. Ohio Jan. 25, 2013); *see also Munchinski v. Wilson*, 694 F.3d 308, 338 (3d Cir. 2012) (stating that impeachment evidence generally is not sufficient to satisfy an actual innocence claim).

That is the case here. Zarazoga's potential testimony is merely impeachment evidence, as it is not exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence on which the Court could rely under *Schlup*. Thus, Zarazoga's testimony does not establish Tucker's actual innocence.

### d.    Later-Discovered Witnesses

Tucker also sought to present at the evidentiary hearing later-discovered evidence from other witnesses, including John Blue, Joe McLemore, Khaalis Miller, and Arthur Storey. (ECF No. 40, PageID #: 558-59). Tucker sought to introduce testimony from Keith Lowry, too, who

administered a polygraph test for Tucker in 2010. (ECF No. 40, PageID #: 559). Tucker represents that this additional evidence was proffered to the trial court at the evidentiary hearing but not admitted into the record. (ECF No. 40, PageID #: 560). Regrettably, Tucker did not submit affidavits from these potential witnesses; he merely represents that they would testify in his defense and gives an overview of their statements. (*See* ECF No. 40).

Tucker asserts that Blue would have testified that, while "standing outside and across the street from Whatley's bar" the night of the shooting, "he saw 2 or 3 people approach and shoot Austin before driving away in a green Chevrolet Blazer." (ECF No. 40, PageID #: 558). Tucker argues that, while it does not exonerate him, Blue's account contradicts Beal's and Fusell's testimonies that "Austin was shot by a single individual, who then calmly walked to his car—parked on the same block as Whatley's—and drove away." (ECF No. 40, PageID #: 555).

Tucker asserts that McLemore would have testified that he was tending bar at Whatley's that night and that "he witnessed the shooting." (ECF No. 40, PageID #: 555). Tucker acknowledges that McLemore, speaking 10 years after the shooting, "does not recall what the man looked like" anymore. (ECF No. 40, PageID #: 555). Tucker asserts that McLemore recalls, however, "that just before the shooting he saw a man walk across Euclid to his car, remove something from his trunk, return and shoot Austin out on the sidewalk next to the bar… [He] recall[s] that the man was brown skinned, not light skinned [like Tucker], and that he was very tall, taller than Austin—who was 6' 2" tall." (ECF No. 40, PageID #: 555).

Tucker asserts that Miller would have testified that he was with his cousin, Joseph Fussell, on the night of the shooting. According to Tucker,

> Miller was with Fussell across the street from Whatley"s when the shooting occurred. According to Miller, he and Fussell dove for cover behind a car when the shooting happened. Miller did not see the shooter, and he does not believe Fussell could have done so

43

> either – because both men had their heads down at the time. Neither man looked up until they heard the shooter's car tires squealing as he drove away.

(ECF No. 40, PageID #: 556).

Tucker asserts that Storey would have testified that he was outside of Whatley's that night.

(ECF No. 40, PageID #: 556). According to Tucker, Storey

> was visiting an uncle who lived in the neighborhood[,] and [Storey] had stopped by the bar to meet a drug connection. After purchasing some crack cocaine, Storey went outside, intending to sell it on the corner. As he left, he passed three men arguing. Moments later, Storey saw one of the men pull a gun and shoot … Austin. The man that Storey described as the shooter, a very tall person with braids, was not Chris Tucker.

(ECF No. 40, PageID #: 556).

Tucker also discussed potential testimony from Lowry, "a Certified Polygraph Examiner with Security & Polygraph Consultants, Inc.[, who] … conducted a polygraph examination on Mr. Tucker on June 22, 2010." (ECF No. 40, PageID #: 559).  Tucker asserts that Lowry conducted "a lengthy interview[,] during which several specific … questions related to the … Austin shooting were formulated." (ECF No. 40, PageID #: 559). Tucker states that Lowry would have testified that, in his professional opinion, Tucker truthfully denied being involved in Austin's murder. (ECF No. 40, PageID #: 559).

All of this potential testimony is unreliable evidence because it is not sworn to under oath. *See Townsend v. Lafler*, No. 02-2151, 2004 WL 1098757, at *610 (6th Cir. May 14, 2004) ("Because [the petitioner] never produced the affidavit [for the testimony at issue], he is in no position to claim it supports his habeas petition."); *see also Dysen v. MacLaren*, No. 5:17-CV-10006, 2017 WL 3642163, at *2 (E.D. Mich. Aug. 24, 2017) ("Petitioner provides no affidavit or any other offer of proof demonstrating that the alibi witnesses were willing to testify or what their

testimony would have been. This speculative claim is insufficient to satisfy Schlup's demanding standard for "new reliable evidence" of actual innocence."); *Waters v. Renico*, No. 04-10199-BC, 2005 WL 1838625, at *5 (E.D. Mich. July 29, 2005) ("The petitioner has not made a showing within the meaning of *Schlup v. Delo* that he is actually innocent. His presentation is limited to his own unsupported, self-serving statements; he has offered no affidavits or other documentary evidence in support of his claims of actual innocence."); *Kindred v. Birkett*, No. 05-CV-71553-DT, 2006 WL 1662547, at *5 (E.D. Mich. June 8, 2006) ("Petitioner has made no such showing of his actual innocence; there are no affidavits that support his claim.").

Tucker did not submit affidavits for any of this potentially exculpatory evidence, nor is there a reliable record of it from the state court's post-conviction proceedings[19]; and Tucker did not address this shortcoming in either his petition or traverse. Thus, it cannot establish his actual innocence under *Schlup*. But even if this evidence were sworn to under oath, it raises credibility issues and generally serves to impeach Beal's eyewitness identification. Because Beal affirmatively identified Tucker as Austin's shooter, and that testimony remains, a reasonable juror could still convict Tucker with this additional evidence in the record. Accordingly, the Court must conclude that this additional later-discovered evidence does not meet the demanding *Schlup* standard.

*          *          *

---

[19] The Court notes that Tucker sought to present this evidence to the state courts during his state post-conviction evidentiary hearing, but the state court limited its evidentiary review, so the evidence is not in the record by that manner. (ECF No. 40, PageID #: 560). Nevertheless, Tucker was represented by counsel at that time and again here when he submitted his amended petition; thus, Tucker had had a fair opportunity to submit affidavits from these individuals here—but did not do so.

The actual-innocence standard requires a petitioner to show that "it is more likely than not that no reasonable juror would have convicted him in … light of the new evidence." *Schlup*, 513 U.S. at 327. Tucker has not done so. Thus, Tucker's petition is not the extraordinary case in which the actual-innocence gateway excuses a procedurally defaulted ground for relief. *Carter*, 443 F.3d at 538. Accordingly, Ground One must be dismissed.

### C.     Ground Two

In Ground Two, Tucker asserts that "[t]he trial court violated Mr. Tucker's right to due process and a fair hearing" when it "significantly and unjustifiably narrow[ed] the scope of the post-conviction evidentiary hearing" to which Tucker was entitled. (ECF No. 40, PageID #: 557 (styling edited)). Tucker had attempted to present witness testimony from Joseph Fussell, Khaalis Miller, John Blue, Arthur Storey, and Joe McLemore; but, as Tucker notes, the Ohio Court of Appeals ordered the trial court to hold an evidentiary hearing on Tucker's newly discovered evidence. *Tucker V*, 2013 WL 3156532, at *2. But the "trial court limited the scope of the hearing to Petitioner's motion for postconviction relief and/or motion for new trial filed August 2, 2007, *only*," after the Ohio Court of Appeals issued *Tucker IV*. *Tucker V*, 2013 WL 3156532, at *3 (emphasis in original). That court concluded in *Tucker V* that narrowing the hearing's scope was proper, as

> the trial court … could not ignore this court's decision in *Tucker IV*. Although Tucker III relied on the fact that the only two eyewitnesses to the crime 'arguably' recanted, *Tucker IV* completely removed any reliance by the trial court on the possible recantation of the two witnesses when considering D.R.'s affidavit.

*Tucker V*, 2013 WL 3156532, at *4. Thus, Tucker asserts that the state courts violated his right to a fair state post-conviction process. (ECF No. 40, PageID #: 557-60 (citing *House*, 547 U.S. at 538

46

and *Schlup*, 513 U.S. at 327-28 for the proposition that a habeas court should consider all of the evidence properly before it, regardless of its admissibility at trial)).

Respondent argues that Ground Two is noncognizable because "it does not provide a basis for federal habeas relief." (ECF No. 67, PageID #: 790-91). Respondent characterizes this ground as concerning "alleged errors in postconviction proceedings," noting that such arguments "are outside [of] the scope of habeas relief." (ECF No. 67, PageID #: 790 (citing *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854-55 (6th Cit. 2017)). Respondent acknowledges that Tucker cites to federal habeas cases that are "root[ed] … in Constitutional due process violations [that] are cognizable on habeas review," but argues that Tucker "cites no case law or argument to show that … a noncognizable post-conviction claim … become[s] cognizable" merely by its reference to the constitution. (ECF No. 67, PageID #: 791).

The Court agrees with Respondent: Ground Two is not cognizable because, at its core, it attacks the state court's handling of his post-conviction relief, rather than how this Court should apply evidence to his underlying conviction. "It is clear, not only from the language of … § 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). States have no federal constitutional obligation to provide postconviction remedies (*Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)), and the Sixth Circuit has thus held that "habeas corpus cannot be used to challenge errors or deficiencies in state postconviction proceedings." *Davis v. Burt*, 100 F. App'x 340, 351 (6th Cir. 2004); *see also Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("the writ is not the proper means" to challenge "collateral matters," which differ from "the underlying state conviction giving rise to the prisoner's incarceration") (internal citations omitted).

The Sixth Circuit recently reaffirmed this holding in *Leonard*: "[H]abeas corpus [petitions] cannot be used to mount challenges to a state's scheme of post-conviction relief … [The petitioner] has not pointed to any decision by an *en banc* court or any Supreme Court decision to undermine the logic of *Kirby* that attacks on post-conviction proceedings 'address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.'" 846 F.3d at 854-55; *see also Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (stating that a claim of constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the applicant's] incarceration … states no cognizable federal habeas claim").

Tucker states in his petition that, "in [the] collateral litigation context, the court should consider 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" (ECF No. 40, PageID #: 560 (quoting *House*, 547 U.S. at 538)). While that accurately states a habeas court's duty when considering the evidence that is properly before it, Ground Two concerns the state court's post-conviction proceedings—the decisions to grant and then limit the scope of an evidentiary hearing based on the evidence's reliability—rather than this Court's role applying that evidence to the underlying conviction that gave rise to his incarceration. That is a noncognizable collateral matter (*Leonard*, 846 F.3d at 854-55), and Tucker's traverse (which discusses only Ground One) does not alter that conclusion. Accordingly, Ground Two must be dismissed.

## VII.    Certificate of Appealability

### A.    Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on

48

appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.     Analysis

Tucker's grounds for relief are either procedurally defaulted or noncognizable. If the Court accepts the foregoing recommendation, then Tucker has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue to Tucker a certificate of appealability.

## VIII.   Recommendation

Tucker has presented only procedurally defaulted or noncognizable claims. Thus, I recommend that the Court DENY Tucker's petition and not grant him a certificate of appealability.

DATED: May 25, 2021

*Carmen Henderson*
_____
Carmen E. Henderson
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).